# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| U.S. Securities and Exchange Comm'n, | ) | |
|     Plaintiff. | ) | Case No: 12 C 4145 |
| | ) | |
|     v. | ) | |
| | ) | |
| Richard DeMaria, | ) | Judge: Kennelly |
|     Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Securities and Exchange Commission (SEC) sued Richard DeMaria under section 17(a) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 under the Exchange Act. It alleged that DeMaria had devised and carried out a "prime bank" scheme that defrauded investors. In April 2013, DeMaria agreed to entry of an order that permanently barred him from further violations of the two statutes and that stated that that he would disgorge his gains and pay prejudgment interest and a civil penalty, with the amounts of these to be determined later, following submission of an appropriate motion by the SEC. At that time, DeMaria was represented by counsel. In May 2013, the SEC filed a motion for summary judgment as to disgorgement, prejudgment interest, and civil penalties. After the Court set a schedule for briefing the motion, DeMaria's counsel was granted leave to withdraw. The Court extended the time for DeMaria to respond to the motion. He did not file a response by the extended deadline and has not sought an extension of time. The Court therefore proceeds to rule on the motion.

By failing to respond to the SEC's Local Rule 56.1 submission, DeMaria is deemed to have admitted the facts set forth in that submission, all of which are properly supported by admissible evidence. The SEC has therefore established that during the year 2008, DeMaria raised $4,289,500 from a number of investors for phony investments that he falsely represented were legitimate. He used at least $3,823,200 for personal use and to fund other business, rather than for the purposes he had represented to the investors. When investors began to request the return of their investments, DeMaria made false

representations to them to attempt to put them off and never returned any funds to any investor. During his deposition in this case, DeMaria claimed his privilege against self-incrimination in response to every question asked other than innocuous preliminary questions. The questions on which DeMaria claimed the privilege included questions regarding his representations to investors and what he did with the funds he raised from investors. The Court can and does draw from the privilege claim, together with the other evidence that has been offered, an inference adverse to DeMaria, namely that he acted with scienter in making the false representations previously summarized. For these reasons and those discussed in the SEC's summary judgment memorandum, the Court concludes that there is no genuine issue of material fact and that the SEC is entitled to judgment as a matter of law on the issue of DeMaria's liability under the pertinent statutes.

Disgorgement is an equitable remedy, available under the statutes at issue, that takes ill-gotten gains from a wrongdoer so that he does not profit from his misconduct. *See, e.g., SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002). As noted above, DeMaria previously consented to pay disgorgement, and the SEC's materials supporting summary judgment establish that he received at least $3,823,000 in ill-gotten gains via his fraudulent scheme. This is a reasonable approximation of his profits causally connected to his violations of the law. *See, e.g., SEC v. Michel*, 521 F. Supp. 2d 795, 830-31 (N.D. Ill. 2007). The Court concludes that $3,823,000 represents the appropriate amount for a disgorgement order in this case.

DeMaria has also previously consented to imposition of prejudgment interest on the disgorgement. The SEC has calculated the interest figure through April 30, 2013 but will need to update that calculation through the date of September 4, 2013, using the same rate of interest that it applied in its preliminary calculation.

Finally, the law permits imposition of a civil penalty in cases involving violations of the Securities Act and Exchange Act. *See* 15 U.S.C. §§ 77t(d) (Securities Act) & 78u(d)(3) (Exchange Act). Each statute provides for three "tiers" of penalties, with the amount depending on the severity of the violation. DeMaria's wrongdoing qualifies for the third and highest tier, because his violations involved fraud and deceit and directly

2

resulted in substantial losses to others.  *See id.* §§ 77t(d)(2)(C) & 78u(d)(3)(B)(iii).   The maximum civil penalty under each statute is $100,000.   The Court considers this to be the overall maximum in this case, because DeMaria's violations of the two statutes are coextensive.   Given the egregiousness of his violations, as well as the fact that DeMaria appears to still be involved in the investment business and thus requires further deterrence, the Court finds that the maximum civil penalty of $100,000 is appropriate.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [dkt. no. 20].   The Court imposes upon defendant Richard DeMaria disgorgement in the amount of $3,823,000, prejudgment interest on the disgorgement in an amount to be determined, and a civil penalty of $100,000.   Plaintiff is directed to file a revised prejudgment interest calculation, through the date of September 4, 2013, by no later than August 29, 2013.   Plaintiff is also directed to file by that date, and is to submit to the undersigned judge's proposed order e-mail address, a proposed form of judgment, using the amounts set forth in this order and the recalculated prejudgment interest amount through September 4, 2013.   The case is set for a status hearing on September 5, 2013 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   August 22, 2013